# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF MICHIGAN

JANE DOE,

     Plaintiff,

v.,

QUINCY PUBLIC SCHOOLS;
QUINCY PUBLIC SCHOOLS BOARD OF EDUCATION;
SUPERINTENDENT MARC KRAMER, in his individual and official capacity;
PRINCIPAL KAREN WEGNER, in her individual and official capacity;
FORMER PRINCIPAL AMANDA WEBB, in her individual and official capacity;
DEAN OF STUDENTS CHRIS GIRLOCH, in his individual and official capacity;
FORMER DEAN OF STUDENTS GABE FRISBIE, in his individual and official capacity;
OTHER UNIDENTIFIED DOES, in their individual and official capacities;

     Defendants.

_____/

Karen Truszkowski (P56929)
TEMPERANCE LEGAL GROUP
Attorney for JANE DOE
210 State St., Suite B
Mason, MI 48854
844.534.2560
karen@temperancelegalgroup.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff JANE DOE, by and through her undersigned counsel, states as follows:

## INTRODUCTION

1.  This is a civil rights action arising from Defendants' egregious failure to protect JANE

    DOE from sexual assault, ongoing peer harassment, disability discrimination, and

    institutional retaliation, all in violation of federal and state law.[1]

---

[1] JANE DOE is an alias to protect her identity.

2.  JANE DOE was sexually assaulted by a fellow student in her own home, and instead of protecting her, Quincy Community Schools and its officials subjected her to unrelenting harassment, denied her educational opportunities, and retaliated against her for reporting abuse.

3.  JANE DOE seeks damages and equitable relief under Title IX of the Education Amendments of 1972, 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and Michigan state law.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal questions), § 1343 (civil rights), and supplemental jurisdiction over state law claims under § 1367. Damages exceed $ 75,000.

5.  Venue is proper in this district under 28 U.S.C. § 1391 because all events occurred within the Western District of Michigan.

## THE PARTIES

6.  Plaintiff JANE DOE is an adult resident of Branch County, Michigan and at relevant times was a student in the Quincy Community School District.

7.  Defendant QUINCY COMMUNITY SCHOOLS is a public school district organized under Michigan law.

8.  Defendant QUINCY COMMUNITY SCHOOLS BOARD OF EDUCATION is the governing body for the school district.

9.  Defendant MARC KRAMER is the retired Superintendent of Quincy Community Schools and is sued in his individual and official capacities.

10. Defendant KAREN WEGNER is the Principal of Quincy High School and is sued in her individual and official capacities.

11.  Defendant AMANDA WEBB is the former Principal and is sued in her individual and official capacities.

12. Defendant CHRIS GIRLOCH is the dean of students and is sued in their individual and official capacities.

13. Defendant GABE FRISBIE is the former dean of students and is sued in his individual and official capacities.

## FACTUAL ALLEGATIONS

14. JANE DOE incorporates the previous paragraphs as if contained herein.

15. In September 2021, JANE DOE was sexually assaulted at her home by another student, identified here as JOHN ROE 1. [2]

16. The assault included non-consensual vaginal penetration, during which JOHN ROE 1 choked JANE DOE with his hands, held her down by force, and ignored her attempts to resist.

17. During the assault, JANE DOE feared she would lose consciousness or die.

---

[2] JOHN ROE 1 is an alias to protect his identity.

18. JANE DOE sustained visible injuries to her neck and arms and experienced immediate emotional distress. In the days and weeks that followed, JANE DOE reported symptoms consistent with acute trauma, including dissociation, insomnia, loss of appetite, and anxiety around school-related environments.

19. JANE DOE and her mother promptly reported the incident to police and JANE DOE began therapy shortly thereafter.

20. JOHN ROE 1 was later prosecuted and pled guilty to a felony offense stemming from this assault. He was adjudicated and convicted in Branch County Circuit Court in 2023.

21. JANE DOE's Mother additionally notified the school of the incident.

22. In response, the school failed to implement any supportive safety measures, accommodations, or protections for JANE DOE.

23. JANE DOE's assailant plead guilty to felony strangulation in April of 2022.  The district allowed him to stay at the school and alleged they could not expel him because his actions did not amount to "criminal sexual conduct," and therefore did not warrant expulsion (contradictory to the mandates of Section 1311 of the Michigan Revised School Code).

24.  Because the district failed to keep JANE DOE separated from the perpetrator, JANE DOE's parents pressed for an expulsion hearing for the assailant, which was ultimately conducted in July 2023.   This incident underscores the district's deliberate indifference towards JANE DOE in the aftermath of her assault and report to the district.

25. Rather than receiving safety and support, JANE DOE faced persistent bullying from peers for reporting her assailant and retaliation from the district for seeking help.

26. After the assault, students shoved and injured JANE DOE; mocked her for reporting her assailant; threatened to assault and kill JANE DOE for reporting her assault. These incidents, among others, were documented to the school and some even investigated, with no meaningful or recourse for JANE DOE.

27. JANE DOE experienced isolation, humiliation, and deteriorating mental health as a direct result of this peer harassment.

28. JANE DOE continues to endure PTSD exacerbated by the continuous, repeated revictimization by both her peers and the district.

29. Not only did the district categorically fail to keep JANE DOE separated from her perpetrator and his friends, but the district also targeted JANE DOE and actively sought to keep JANE DOE from full enjoyment of her education.

30. The district's retaliation includes fabricating discipline on JANE DOE's record solely to keep JANE DOE from being in the National Honors Society (NHS).

31. Despite disproving each accusation and involving the College Board after having been falsely accused of "cheating" on her SAT, the District continued to fabricate discipline and made repeated baseless and unfounded accusations of academic dishonesty against JANE DOE.

32. The district continued to target JANE DOE because she reported her sexual assault to the district.

33. JANE DOE qualified for NHS under the Quincy Bylaws since her sophomore year, the first eligible grade level for membership in the Quincy NHS. Throughout her last three years, JANE DOE attended the school for more than one semester, maintained a

cumulative GPA over 3.500, and maintained outstanding scholarship, character, and service record.

34. JANE DOE was first rejected from NHS in April 2022.

35. Defendants did not initially inform JANE DOE of the reason for her rejection from NHS and provided her with no opportunity to respond.

36. It took JANE DOE's mother several attempts to speak with the principal to determine why JANE DOE was not selected, only to find out the school rejected JANE DOE based on alleged "discipline" on her record.

37. The principal alleged, for the first time to JANE DOE's parents, that JANE DOE "cheated" on a test the year before.

38. This cheating incident never occurred.  Not only were JANE DOE and her parents never notified, but the district was also unable to produce any record or proof regarding the alleged instance of "cheating."

39. In fact, this imaginary "discipline" was only ever reported to the NHS Council, resulting in JANE DOE's exclusion from the Program.

40. In spring 2022, JANE DOE's family requested disability accommodations under Section 504 due to symptoms of PTSD and anxiety.

41. The district failed to schedule any 504 meeting or conduct an evaluation.

42. JANE DOE's mental health symptoms worsened due to lack of support, culminating in frequent absences and difficulty completing assignments.

43. In May 2022, JANE DOE again applied to NHS and was again denied on the same vague grounds of "character."

44. In fall 2022, JANE DOE's family renewed requests for academic accommodations and evaluation, which were again ignored.

45. On January 6, 2023, JANE DOE's parent submitted a formal written request for a Section 504 evaluation.

46. On January 20, 2023, JANE DOE was interviewed for the Title IX investigation initiated by the district, but the school never provided a report or findings.

47. JANE DOE continued to be harassed by peers, including false rumors and cruel social media posts.

48. In March 2023, JANE DOE's attendance declined further, and her grades began to fall below scholarship-qualifying thresholds.

49. JANE DOE was again rejected from NHS on or about April of 2023, despite meeting all qualifications.

50. On April 18, 2023, JANE DOE's parent requested a meeting with school administrators to discuss the records and retaliation but received no response.

51. In May 2023, a peer posted a video to Snapchat mocking JANE DOE, with laughing emojis and references to "fake victims."

52. JANE DOE experienced a panic attack at school and requested to leave but was denied permission by a teacher.

53. JANE DOE's mental health care provider sent a letter to the school recommending temporary academic modifications.

54. The school failed to respond to the provider's letter.

55. On May 12, 2023, JANE DOE's mother emailed Principal Wegner, appealing the April 2023 NHS denial.

56. On May 15, 2023, the Principal emailed JANE DOE's mother a Discipline record (entered that same day), regarding an "alleged" plagiarism event on April 25, 2023, that purportedly formed the basis of JANE DOE's rejection from NHS.

57. The allegation was that on April 25, 2023, JANE DOE allegedly "plagiarized" information on a slide show presentation in her science class, despite including citations on her fifth slide.

58. According to JANE DOE's science teacher, Ms. Miller, JANE DOE was supposed to cite each slide.

59. JANE DOE, however, had missed a day of instruction for therapy related to her PTSD, and was unaware of such a requirement.

60. JANE DOE's teacher, Ms. Miller, had not informed JANE DOE of the alleged plagiarism, did not record the plagiarism event until after JANE DOE's mother contacted the principal, and never discussed the assignment with JANE DOE.

61. Principal Wegner claimed the school "forgot" to enter the discipline.  The school, apparently, also forgot to notify the parents, despite the Quincy student handbook requirement that parents be informed of student discipline.

62. Further, when JANE DOE's parents requested records of communications between Ms. Miller and Principal Wegner regarding the alleged plagiarism, the email date was conveniently excluded from the provided record.

63. JANE DOE never plagiarized, nor intended to plagiarize.  JANE DOE's actions do not even meet the most basic definition of plagiarism.  JANE DOE did not in any way, exhibit academic dishonesty or demonstrate an intent to pass off another's ideas as her own.

64. On May 16, 2023, JANE DOE's mother requested JANE DOE's complete C60 file at Quincy schools, and there was no record regarding any plagiarism in JANE DOE's records.

65. April 25, 2023, the date of the alleged plagiarism, happened to also be the same day JANE DOE's family spoke to administration regarding JANE DOE's negative experiences at Quincy and requested JANE DOE be evaluated for an IEP—an evaluation which Quincy never performed.

66. When JANE DOE's mother sought to coordinate NHS applications for 2024, JANE DOE's mother was informed incorrectly, and in direct contradiction of NHS and Quincy NHS policy, that Seniors were not invited to apply.

67. Contrary to the NHS' counselor's implication that Seniors are not eligible to apply, Quincy does allow Seniors on NHS.

68. Upon information and belief, the school allowed a senior student STUDENT A[3] to participate in NHS as a Senior after having been found by the school to have threatened to assault and kill JANE DOE earlier that year because of JANE DOE's reporting of her sexual assault.

69. STUDENT A's violation was documented in JANE DOE's Title IX investigation and was forwarded to the NHS counselor from JANE DOE's mother, making the Quincy NHS on notice of STUDENT A's behavior.

70. On May 22, 2023, JANE DOE received a failing grade in one class, despite her prior documented medical needs and excused absences.

---

[3] STUDENT A is an alias to protect their identity.

71. In June 2023, JANE DOE and her family began exploring a transfer to another school district. They were advised by counselors that a transfer would cause further disruption and make credits non-transferable. JANE DOE remained enrolled and continued to experience retaliation and isolation.

72. In August 2023, the school denied JANE DOE access to a scholarship-sponsored enrichment program.

73. In August 2023, school officials emailed JANE DOE's parents about alleged disciplinary infractions but failed to provide supporting documentation.

74. JANE DOE's family responded immediately requesting clarification and a copy of the alleged disciplinary record. The district did not respond to the request, nor did it provide any documentation.

75. On September 6, 2023, JOHN ROE 2[4], previously removed from school due to threatening behavior toward JANE DOE, was observed back on campus.

76. JANE DOE immediately reported JOHN ROE 2's presence to a staff member and expressed fear for her safety.

77. The school did not notify JANE DOE's parent or implement any safety measures in response.

78. JANE DOE experienced renewed anxiety and missed classes due to fear of further retaliation.

79. In October 2023, JANE DOE's 504 evaluation remained pending, and no meeting had been scheduled.

---

[4] JOHN ROE 2 is an alias to protect his identity.

80. JANE DOE continued to attend school without accommodations despite repeated requests from her therapist.

81. In November 2023, JANE DOE was informed she would not receive academic recognition at graduation due to unexplained discipline notations.

82. JANE DOE's parent again requested correction of the record, citing the lack of transparency and the academic harm being caused.

83. The school again failed to respond or provide any meaningful process to appeal.

84. In December 2023, JANE DOE was excluded from a leadership award nomination despite her qualifying GPA.

85. The exclusion was later revealed to be based on a "character" concern, for which JANE DOE received no notice or hearing.

86. JANE DOE's therapist submitted updated documentation reiterating the educational and emotional harm caused by retaliation and lack of accommodations. No action was taken in response to this documentation.

87. In February 2024, JANE DOE was again denied participation in a school-wide academic competition without explanation.

88. These cumulative denials caused JANE DOE to believe she was being blacklisted within her school for having reported sexual assault.

89. In March 2024, JANE DOE submitted a written follow-up to the district requesting an update on her pending 504 plan and past retaliation complaints.

90. In April 2024, JANE DOE's counselor issued a new written statement recommending targeted accommodations for JANE DOE's anxiety and trauma.

91. The district again failed to respond.

92. On May 2, 2024, JANE DOE's parent submitted a formal administrative complaint to the Superintendent and Board of Education documenting retaliation, harassment, and record-keeping failures.

93. The complaint requested investigation, remediation, and formal acknowledgment of JANE DOE's rights.

94. Upon information and belief, no action was taken in response, and no meeting or hearing was scheduled.

95. In mid-May 2024, JANE DOE completed final exams while continuing to suffer from depression and anxiety linked to school-based retaliation.

96. The Quincy NHS Induction Ceremony was scheduled for the first week of May 2024, and on or around May 20, 2024, graduation ceremonies proceeded without recognition of JANE DOE's achievements.

97. Despite each attempt to discipline, punish, and blame JANE DOE, JANE DOE proved that the district was wrong or lacked evidence.

98.  JANE DOE's request for retroactive academic acknowledgment or clarification was denied without explanation.

99. In June 2024, JANE DOE's family submitted a FERPA records request seeking complete documentation of academic and disciplinary entries.

100.    The district failed to produce the requested documents within the statutory timeline.

101.    On July 2, 2024, the district sent written notice that the disputed discipline entries would remain on JANE DOE's record.

102.    The letter provided no explanation or supporting documentation.

103.    JANE DOE's therapist submitted a final letter urging the district to address the
traumatic impact of the unresolved retaliation.

104.    No action was taken in response.

105.    Upon information and belief, JANE DOE's academic record remains marked by
unexplained discipline and missed opportunities despite her efforts to comply
with all requirements.

106.    Upon information and belief, the district never offered any restorative, informal
resolution process, or trauma-informed support.

107.    Upon information and belief, no administrator or staff member expressed concern
or acknowledgment of the harm done.

108.    JANE DOE's educational experience was fundamentally altered by retaliation,
indifference, and lack of accommodations.

109.    JANE DOE's medical team documented ongoing anxiety, depression, and t
trauma-related interference with daily functioning.

110.    JANE DOE continues to suffer symptoms of PTSD, including nightmares,
flashbacks, and educational avoidance.

111.    JANE DOE has been unable to access certain college resources due to the
absence of a finalized 504 Plan or IEP.

112.    JANE DOE was denied eligibility for multiple scholarships due to GPA and
disciplinary notations affected by unaddressed retaliation.

113.    Upon information and belief, the district never issued a formal notice of rights,
investigative findings, or a safety plan related to JANE DOE's Title IX report.

114.    Upon information and belief, no administrators conducted a review or hearing to assess the ongoing retaliation or mismanagement of her accommodations.

115.    Upon information and belief, school board members had actual knowledge of JANE DOE's situation and took no corrective action.

116.    JANE DOE was never provided access to an advocate or Title IX coordinator trained in trauma-informed care.

117.    Upon information and belief, defendants failed to retain records of meetings, communications, or evaluations related to JANE DOE's requests for help.

118.    JANE DOE's younger sibling enrolled in the same district was also subject to stigma because of the family's advocacy.

119.    JANE DOE's family was treated as adversarial and excluded from routine communications after raising civil rights concerns.

120.    JANE DOE received no explanation for how the "character" designations used against her were documented, defined, or reviewed.

121.    These unexplained notations were determinative in her exclusion from academic honors and extracurricular leadership.

122.    JANE DOE exhausted all known administrative remedies, including internal appeals and state-level guidance.

123.    JANE DOE's academic trajectory, self-esteem, and future opportunities have been materially and irreversibly harmed.

124.    JANE DOE feared retaliation would follow her into college applications, job references, and public interactions within the community.

125.     JANE DOE's family feared reputational damage and professional retaliation from further public engagement with school officials.

126.     The absence of meaningful accountability or empathy from school leaders c comunicated that her safety and learning were not priorities.

127.     Defendants' conduct has created a chilling effect on other students who might otherwise report harassment or seek accommodations.

128.     JANE DOE's medical providers noted that the school's failures materially contributed to her mental health deterioration.

129.     Her treatment providers warned of long-term educational and occupational consequences if the environment was not addressed.

130.     Upon information and belief, at no point did the district implement a written safety plan, notice of rights, or follow-up support consistent with federal guidance.

131.     Upon information and belief, JANE DOE was denied access to extracurricular and leadership opportunities due to character-based disqualifications that were rooted in retaliatory discipline.

132.     Despite dozens of communications, JANE DOE's family never received a written explanation of the disciplinary entries cited in denial letters.

133.     Upon information and belief, defendants failed to implement corrective action even after the entry of JOHN ROE 1's felony conviction.

134.     Upon information and belief, administrators took no steps to restore JANE DOE's access to honors, scholarships, or academic reputation.

135.    Upon information and belief, no restorative or corrective communication was sent to staff or students acknowledging the school's mishandling of JANE DOE's reports.

136.    JANE DOE's educational record contains unjustified notations that she has been unable to remove through any internal process.

137.    Quincy Community Schools failed to meet even the most basic requirements of Title IX grievance procedures.

138.    JANE DOE was never offered access to a trauma-informed Title IX advisor or advocate.

139.    Upon information and belief, no administrator or Title IX coordinator ever documented or tracked retaliation complaints submitted by JANE DOE and her family.

140.    JANE DOE was repeatedly placed in the position of having to self-advocate, submit safety requests, and explain her trauma to untrained staff.

141.    Staff responses were often dismissive, delayed, or accusatory.

142.    The district maintained a pattern of reacting only after legal pressure, rather than proactively supporting JANE DOE's rights.

143.    The district failed to schedule any meeting or provide documentation supporting the contested entries in JANE DOE's academic record.

144.    JANE DOE's family attempted to access due process procedures available under school policy but were given inconsistent or unclear instructions.

145.    The district did not respond to the therapist's follow-up letter reiterating JANE DOE's needs.

146.    As of August 2024, JANE DOE had not received any response from the school board or administration regarding her parent's May 2, 2024, formal complaint.

147.    JANE DOE was required to share hallways, common areas, and even classrooms with peers who had harassed her, mocked her, and issued threats.

148.    At no time did the school offer remote instruction, alternate transportation, or scheduling flexibility to mitigate exposure.

149.    Her academic record and disciplinary file continue to reflect unverified or  d disputed entries.

150.    Defendants failed to acknowledge wrongdoing or propose any compensatory measures.

151.    Upon information and belief, no school board meeting agenda, notice, or public discussion reflected any concern or plan to address JANE DOE's situation.

152.    JANE DOE's experience was emblematic of systemic Title IX and disability violations within the district.

153.    School officials exhibited deliberate indifference to JANE DOE's trauma, disability, and repeated safety requests.

154.    Even after JANE DOE's graduation, no correction, apology, or acknowledgment was issued.

155.    JANE DOE's exclusion from recognition and leadership was driven by stigma tied to her Title IX report.

156.    JANE DOE's repeated efforts to challenge erroneous entries in her records were ignored.

157.    JANE DOE was advised that certain notations in her file may violate FERPA, yet the district failed to offer any correction mechanism.

158.    Upon information and belief, staff responsible for reviewing applications for honors and awards had access to unredacted discipline records that included retaliation-related entries.

159.    The district failed to establish or communicate any appeal process for academic honors decisions. JANE DOE was at all relevant times qualified to participate in school-sponsored programs and meet academic criteria.

160.    The retaliatory conduct detailed above was ongoing, severe, and objectively unreasonable.

161.    Defendants' policies, customs, or practices allowed retaliation to go unremedied and unaddressed.

162.    Defendants acted with deliberate indifference toward JANE DOE's rights under Title IX, the ADA, and Michigan law.

163.    JANE DOE's reports of retaliation were sufficiently detailed to trigger mandatory school responses.

164.    Defendants failed to train staff to identify or respond appropriately to retaliation or disability-related distress.

165.    JANE DOE was excluded from an equal education opportunity due to Defendants' actions and omissions.

166.    JANE DOE was denied a full and equal opportunity to participate in school programs and services.

167.    Upon information and belief, JANE DOE was treated less favorably than similarly situated students who had not reported sexual assault.

168.    JANE DOE's family incurred out-of-pocket costs for psychological care, educational consultation, and legal support related to the district's failure to protect her.

169.    As of August 2024, JANE DOE continues to receive clinical treatment for trauma related to her school experience.

170.    The cumulative harm affected JANE DOE's college applications, mental health, and access to scholarships.

171.    The harm to JANE DOE is ongoing, irreparable, and the direct result of Defendants' unlawful conduct.

172.    JANE DOE continues to struggle with accessing post-secondary accommodations due to incomplete records. JANE DOE's educational future remains compromised by Defendants' refusal to remediate false disciplinary records or offer restorative options.

173.    JANE DOE's post-secondary disability accommodations have been delayed due to lack of documentation from the district.

174.    JANE DOE has suffered reputational damage within her academic and local community due to the stigma perpetuated by Defendants' inaction.

175.    JANE DOE's future earning potential has been negatively affected by missed scholarships and honors.

176.    JANE DOE's situation has received attention from advocacy organizations concerned about systemic failures in rural districts.

177.    Defendants' conduct constitutes a pattern of retaliation, not isolated administrative error.

178.    The district's failure to follow policy reflects a broader culture of noncompliance with civil rights obligations.

179.    Defendants demonstrated deliberate indifference to JANE DOE's protected rights.

180.    JANE DOE's trauma and educational disruption were foreseeable and preventable.

181.    JANE DOE is seeking accountability not only for herself, but to protect future students from similar mistreatment.

182.    JANE DOE brings this action to secure accountability, protect her civil rights, and prevent future harm to other students.

183.    JANE DOE brings this Complaint in good faith and based solely on verified facts from her educational record.

## <u>COUNT I</u>

### TITLE IX — RETALIATION

(Against Defendants Quincy Community Schools and Quincy Community Schools Board of Education)

12.    Defendants retaliated against JANE DOE for reporting sexual assault and engaging in protected activity, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. by, among other actions: denying her access to National Honor Society induction on pretextual 'character' grounds . These retaliatory actions created a hostile educational environment and sent a clear message that reporting sexual assault would result in punishment rather than protection.

157.    JANE DOE engaged in protected activity by reporting her sexual assault and seeking accommodations.

158.    Defendants were aware of JANE DOE's reports and complaints.

159.    JANE DOE suffered adverse educational actions, including exclusion from academic honors, leadership opportunities, and other programs.

160.    A causal connection exists between JANE DOE's protected activity and Defendants' adverse actions.

## COUNT II

### TITLE IX — DELIBERATE INDIFFERENCE TO SEXUAL HARASSMENT

(Against Defendants Quincy Community Schools and Quincy Community Schools Board of Education)

162.    Defendants acted with deliberate indifference to JANE DOE's reports of sexual assault and resulting harassment by, among other failures: refusing to implement any safety plan or follow-up procedures; ignoring direct pleas from JANE DOE and her family regarding harassment; allowing harassing peers to remain in proximity despite threats; and denying basic mental health accommodations. These omissions show an institutional culture that prioritized avoidance and liability control over student safety and wellbeing.

163.    JANE DOE was subjected to severe, pervasive, and objectively offensive harassment that deprived her of educational access.

164.    Defendants had actual knowledge of the harassment and failed to take appropriate action.

165.    As a direct result, JANE DOE suffered emotional, academic, and reputational harm.

## COUNT III

### 42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION

(Against individual Defendants)

166.     JANE DOE exercised her First Amendment rights by reporting sexual assault and

engaging in advocacy through multiple formal complaints, safety requests, and

documented outreach to administrators. Rather than supporting her speech rights,

Defendants viewed these efforts as disloyal challenges to authority and took steps to

punish her.

167.     Defendants, acting under color of state law, took adverse actions against JANE

DOE in retaliation.

168.     Defendants' actions would deter a person of ordinary firmness from continuing to

speak out.

169.     Defendants' retaliatory conduct violated JANE DOE's constitutional rights.

## COUNT IV

### AMERICANS WITH DISABILITIES ACT (ADA) VIOLATIONS

(Against Defendants Quincy Community Schools and Quincy Community Schools Board of
Education)

170.     JANE DOE has a qualifying disability as defined under the ADA, including

trauma-related anxiety and PTSD, confirmed by multiple therapy providers. Defendants

knew of these conditions yet treated JANE DOE as a nuisance rather than a student in

need of lawful support.

171.     JANE DOE was otherwise qualified to participate in school programs and

activities.

172.     Defendants failed to provide reasonable accommodations and excluded JANE

DOE from full participation.

173.     Defendants' denial of access was by reason of JANE DOE's disability and in

violation of the ADA.

## COUNT V

### GROSS NEGLIGENCE (STATE LAW)

(Against Individual Defendants)

174.     Defendants owed JANE DOE a duty of care to provide a safe, nondiscriminatory

educational environment. Instead, they disregarded credible threats, dismissed parental

concerns, and allowed JANE DOE to be repeatedly exposed to harm and humiliation.

175.     Defendants breached that duty through conduct so reckless as to demonstrate a

substantial lack of concern for whether injury would result.

176.     Defendants' gross negligence was the proximate cause of JANE DOE's

emotional, academic, and reputational injuries.

## COUNT VI

### ELLIOTT-LARSEN CIVIL RIGHTS ACT (ELCRA) VIOLATIONS

(Against All Defendants, including Quincy Community Schools and its Board, as ELCRA
applies to public educational institutions)

177.     Defendants discriminated against JANE DOE by branding her with vague

'character' failures, selectively enforced discipline, and exclusion from academic

honors—all after she reported sexual assault. ELCRA applies to public educational

institutions such as Quincy Community Schools and its Board of Education.

178.     JANE DOE was denied full and equal access to educational opportunities and

programs.

179.     Defendants treated JANE DOE less favorably than similarly situated students

based on her sex and status as a survivor.

180.      Defendants' conduct constitutes unlawful sex discrimination under Michigan law.

## COUNT VII

**MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 — CUSTOM, POLICY, OR PRACTICE (Monell Claim)**

(Against Defendants Quincy Community Schools and Quincy Community Schools Board of Education)

181.      JANE DOE incorporates by reference all preceding paragraphs.

182.      At all relevant times, Defendants Quincy Community Schools and its Board of Education acted under color of state law and maintained customs, policies, or practices that directly caused the violation of JANE DOE's constitutional rights, including her rights under the First and Fourteenth Amendments.

183.      Upon information and belief, Quincy Community Schools has a documented history of mishandling serious allegations of abuse, misconduct, and student safety concerns.

184.       In 2017, senior administrators—including the then-superintendent and principal—were criminally charged for failing to report a teacher's sexual abuse of a 15-year-old student. The teacher was quietly allowed to resign with severance despite an ongoing criminal investigation.

185.      In 2017, senior district administrators—including the then-superintendent and high school principal—were criminally charged for failing to report a teacher's sexual abuse of a 15-year-old student. Despite an active criminal investigation, the teacher was quietly permitted to resign with severance. This decision to prioritize the district's liability avoidance over student protection reflects a longstanding administrative culture of concealment and neglect.

186.    In 2024, PE teachers at Denman Elementary School were suspended after taping students' mouths and using other inappropriate disciplinary practices. The district failed to promptly notify parents or the public, resulting in widespread criticism for lack of transparency and concern for student welfare.

187.    Also in 2024, several students within the district experienced medical episodes that triggered an environmental health investigation. Community members raised concerns about Quincy Community Schools' inadequate communication regarding potential health risks and the failure to provide meaningful updates about the investigation's findings.

188.    These incidents are not isolated. They reflect a pattern of institutional denial, inadequate oversight, and a systemic resistance to accountability. Defendants' failure to acknowledge, remediate, or learn from these serious events demonstrates a culture of deliberate indifference to student safety, wellbeing, and civil rights. Against this backdrop, JANE DOE's mistreatment was not an aberration but rather part of a broader institutional failure that placed her and other students at continuing risk of harm.

189.    Against this backdrop, JANE DOE's mistreatment is not an isolated failure but part of a broader pattern of institutional indifference to student safety and civil rights.

190.    Specifically, Defendants maintained a policy, custom, or practice of:

   a.    Failing to respond appropriately to reports of sexual harassment and assault;

   b.    Tolerating and ignoring known peer retaliation against students who report such abuse;

   c.    Denying accommodations to students with trauma-related disabilities despite repeated notice;

    **d.**  Marking student records with vague and unexplained disciplinary notations used to exclude them from academic honors and leadership;

    **e.**  Disregarding legal obligations under Title IX, the ADA, and Section 504 of the Rehabilitation Act;

    **f.**  Refusing to investigate formal complaints, provide procedural safeguards, or document findings consistent with federal guidance;

    **g.**  Retaliating against students and families who engaged in protected speech, including civil rights advocacy and safety complaints.

191.    These incidents establish an entrenched pattern of indifference, lack of oversight, and institutional resistance to accountability.

192.    Defendants' failure to train employees in trauma-informed care, Title IX compliance, and disability accommodations reflects a deliberate choice that resulted in foreseeable violations of JANE DOE's rights.

## **RELIEF REQUESTED**

WHEREFORE, JANE DOE respectfully requests that this Court:

(a) Award compensatory and punitive damages in an amount to be determined at trial;

(b) Order equitable relief to correct JANE DOE's records and implement appropriate Title IX and disability accommodations policies;

(c) Award reasonable attorneys' fees and costs;

(d) Grant such other and further relief as justice requires.

**JURY DEMAND**

JANE DOE demands a trial by jury on all issues so triable.


DATED: August 2, 2025

      Respectfully submitted,

      */s/ Karen Truszkowski*

      Karen Truszkowski (P56929)
      TEMPERANCE LEGAL GROUP
      Attorney for JANE DOE
      503 Mall Court
      Lansing MI 48912
      844.534.2560
      karen@temperancelegalgroup.com